### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WALZA STARR,<br><br>       **Plaintiff,**<br><br>       v.<br><br>GARDNER WIRELESS, LLC,<br><br>       **Defendant.** | Case No. 2:25-CV-02380-JAR-TJJ |

### MEMORANDUM AND ORDER

Plaintiff Walza Starr brings this removal action against Defendant Gardner Wireless, LLC for negligence; negligent hiring, retention, and supervision; and violations of the Kansas Consumer Protection Act ("KCPA"). Before the Court is Defendant's Motion to Dismiss (Doc. 7) for lack of subject matter jurisdiction. Defendant contends that Plaintiff lacks Article III standing because (1) Plaintiff is not a "consumer" within the meaning of the KCPA, and (2) Defendant owed Plaintiff no duty of care. For the reasons stated below, the Court denies in part Defendant's motion to the extent it presents a facial attack on the Court's subject matter jurisdiction. The Court will also treat Defendant's motion to dismiss, to the extent it presents a factual attack on the Court's subject matter jurisdiction, as a motion for summary judgment and will provide the parties time to present additional materials to assist the Court in ruling on the summary judgment motion.

**I.**     **Background**

Plaintiff filed this action in the District Court of Johnson County, Kansas, on September 26, 2024.[1] On June 3, 2025, Plaintiff filed a Second Amended Petition (the "Complaint")

---

[1] Doc. 3 at 1.

naming Gardner Wireless, LLC as a defendant.[2]  Defendant was served on June 25, 2025, and removed the case to federal court on July 15, 2025, invoking the Court's diversity jurisdiction under 28 U.S.C. §§ 1332, 1441(a), and 1446(b).[3]

Plaintiff's Complaint alleges that on December 23, 2023, Plaintiff, who serves as a pastor for a church, visited a Target store where an employee of Defendant, Sahil, offered Plaintiff a package of free Apple devices that included an upgrade to iPhone 15s for Plaintiff and Plaintiff's family.  Plaintiff alleges that Sahil discussed potential pricing benefits, including a military discount based on Plaintiff's veteran status and possible tax-exempt treatment upon presentation of a tax-exempt certificate as a religious organization.  Thereafter, Sahil directed Plaintiff to Defendant's store in Gardner, Kansas, to complete the transaction.

On January 2, 2024, Plaintiff and Plaintiff's son went to Defendant's store.  There, Defendant's employee, April, conducted the transaction.  April told Plaintiff the store's wireless boxes were on back order and advised Plaintiff to keep Plaintiff's current AT&T service active. April then requested that Plaintiff surrender Plaintiff's three iPhones, obtained the passwords to each phone, and began transferring Plaintiff's data to the new devices.

April informed Plaintiff that because Plaintiff had a residential AT&T account, April could not provide three free iPhone 15s in accordance with Sahil's earlier offer.  Instead, the phones would cost $15 per month per phone, $45 per month total, and that amount would appear on Plaintiff's monthly bill.  Plaintiff proceeded with the purchase and left the store with three new iPhone devices.  The following day, noting the discrepancy between April's in-store terms

---

[2] Doc 1-1.

[3] Doc. 1.

and Sahil's earlier offer of three free iPhone 15 devices at Target, Plaintiff called Sahil, who stated that Sahil's initial offer concerned personal lines rather than business lines.

Beginning about January 10, 2024, Plaintiff discovered unauthorized logins to Plaintiff's Google account and associated services from devices Plaintiff no longer possessed, was locked out of certain email accounts, and had to work with Plaintiff's bank to freeze accounts and cancel debit cards.

Plaintiff seeks relief under the KCPA and for negligence and negligent hiring, retention, and supervision. Defendant now moves to dismiss Plaintiff's claims for lack of subject matter jurisdiction under Rule 12(b)(1), asserting that Plaintiff lacks Article III standing because Plaintiff is not a KCPA "consumer"[4] and that no duty was owed to Plaintiff because the Defendant transacted with Faith City Christian Center ("Faith City") rather than with Plaintiff. As part of that contention, Defendant argues that Plaintiff serves as Faith City's pastor and executive officer and acted on behalf of Faith City during the January 2, 2024 transaction.

## II.     Legal Standard

In considering Defendant's challenge to subject matter jurisdiction, the Court must first determine the manner in which it should decide the motion. Article III standing is a threshold question of subject matter jurisdiction, which the Court considers under Rule 12(b)(1).[5] A motion to dismiss pursuant to Rule 12(b)(1) generally may take one of two forms: a facial attack on the sufficiency of the complaint's allegations, in which case the allegations are accepted as true; or a factual attack based on matters outside the complaint, in which case the Court does not

---

[4] Under K.S.A. § 50-624(b), a "consumer" is "an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes."

[5] *Kerr v. Polis*, 20 F.4th 686, 692 (10th Cir. 2021).

presume the truthfulness of the allegations, but resolves factual disputes based on evidence.[6] "However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."[7] The focus of that inquiry is "whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim."[8]

### III. Discussion

Defendant raises both a facial and a factual challenge to subject matter jurisdiction. On the facial side, Defendant argues that Plaintiff's Complaint is facially deficient because it alleges that it was actually Faith City who transacted with Defendant and not Plaintiff; therefore, Plaintiff lacks Article III standing to bring the present suit. On the factual side, Defendant relies on materials outside the pleadings to argue that Plaintiff was not a KCPA "consumer" and that no duty ran to Plaintiff. The Court addresses these arguments in turn.

#### A. Facial Attack

In considering Defendant's facial attack, the Court accepts the allegations in Plaintiff's Complaint as true and considers those allegations in determining whether Plaintiff has met Plaintiff's burden to prove standing at the motion to dismiss stage.[9] To establish Article III standing, Plaintiff must adequately show that Plaintiff has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

---

[6] *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995).

[7] *Id.* at 1003.

[8] *Sivoza v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1324 (10th Cir. 2002) (citing *Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000)).

[9] *Holt*, 46 F.3d at 1002.

by a favorable judicial decision."[10]  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[11]  Courts evaluating constitutional standing "must accept as true all material allegations of the Complaint, and must construe the Complaint in favor of the complaining party."[12]

Here, accepting the Complaint's allegations as true and drawing all reasonable inferences in Plaintiff's favor, it adequately alleges each element of Article III standing.  First, Plaintiff alleges concrete, particularized injuries that followed an in-store transaction on January 2, 2024: Defendant's employee took possession of Plaintiff's three iPhones, requested and received the passwords for each phone, and transferred Plaintiff's data to new devices. Shortly thereafter, Plaintiff experienced unauthorized access to Plaintiff's Google accounts, lockouts from email, and banking disruptions requiring account freezes.

Second, the Complaint traces those harms to Defendant's handling of Plaintiff's devices, credentials, and data during the January 2 transaction.  Plaintiff alleges the problems began after Defendant's employee took Plaintiff's phones and passwords and completed the data transfer, and that the devices Plaintiff left with Defendant were later used to access Plaintiff's accounts and alter associated phone numbers.  Third, Plaintiff seeks damages for negligence and violations of the KCPA for the alleged data misuse and resulting economic losses.  A favorable judgment awarding damages would redress these injuries.

However, Defendant argues the Complaint shows that Faith City, not Plaintiff, was the actual customer for the transaction, and that any resulting injury was suffered by Faith City, not

---

[10] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[11] *Id.* at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[12] *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

Plaintiff.  Defendant points to allegations that Plaintiff discussed using a tax-exempt certificate as a religious organization with Sahil at Target.  Defendant also relies on Plaintiff's allegation that, during a January 3, 2024 phone call after the transaction was complete, Sahil stated to Plaintiff that Sahil's initial offer for free Apple devices was for personal lines rather than business lines.  In Defendant's view, these allegations indicate that Plaintiff accepted service on business lines on behalf of Faith City on January 2, 2024.

The Court concludes that, when read in context and construed in Plaintiff's favor, Plaintiff's Complaint pleads a personal transaction.  The Complaint alleges that on January 2, 2024, Plaintiff and Plaintiff's son went to Defendant's store to finalize the offer Sahil had made on December 23, 2023, which included three iPhone 15 devices for Plaintiff and Plaintiff's family.  At the store, Defendant's employee, April, asked Plaintiff to surrender Plaintiff's phones, and Plaintiff did.  April then explained that because Plaintiff had a residential AT&T account—rather than a business account—the free-device promotion did not apply, indicating the purchase was for three residential devices, as opposed to three business devices for Faith City.

Additionally, Defendant's reliance on Plaintiff's allegation regarding the January 3, 2024 phone call with Sahil, in which Sahil clarified that the initial Target offer concerned personal rather than business lines, is misplaced.  The Complaint places Sahil's statement after the January 2 transaction and alleges that Plaintiff completed the purchase with April and did not receive any free devices because Plaintiff lacked a business account with AT&T.  Construed in Plaintiff's favor, these allegations indicate a personal purchase of three residential lines rather than business lines for Faith City.  Furthermore, the Complaint does not allege that Faith City executed any agreement, that Faith City was billed for the lines, nor that Faith City received the devices.  While the Complaint references discussions about using a tax-exempt certificate as a

6

religious organization, Plaintiff never admits that a religious organization was the contracting party to the transaction.

On these allegations, the face of the Complaint plausibly alleges that Plaintiff, not Faith City, sought or acquired the services from Defendant for personal and household use. Therefore, the Complaint, taken as true, alleges injury-in-fact, causation, and redressability. Accordingly, to the extent Defendant's motion presents a facial attack on the sufficiency of Plaintiff's Complaint as it relates to subject matter jurisdiction, Defendant's motion is denied.

### B. Factual Attack

Defendant's factual attack on subject matter jurisdiction rests on materials outside the pleadings that, Defendant argues, show Faith City—not Plaintiff—was the contracting party.[13] Defendant submits various documents, including (1) four "Installment Loan Agreement/Security Agreement" forms identifying Faith City as the "Borrower/Customer" for the transaction at issue and purportedly bearing Plaintiff's signature; (2) a January 16, 2024 invoice addressed to Faith City reflecting the disputed devices and services; and (3) several Kansas Secretary of State filings indicating that Plaintiff serves as an officer of Faith City.

Plaintiff responds that he transacted with Defendant in his personal capacity. Plaintiff argues that he never saw any paperwork, never signed any agreement, and did not know Faith City was identified as the "Borrower/Customer" for the transaction. Plaintiff contends the

---

[13] Defendant asks the Court to take judicial notice of several Kansas Secretary of State records showing that Faith City is a Kansas non-profit corporation and that those filings identify Plaintiff as an officer. The Court grants that request in this limited respect and takes judicial notice of the existence and contents of the public filings. *See* Fed. R. Evid. 201(b); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (explaining that courts may take judicial notice of public records, but such documents "may only be considered to show their contents, not to prove the truth of the matters asserted therein"). The Court expressly declines to take judicial notice of the four purported "Installment Loan Agreement/Security Agreement" documents and the January 16, 2024 invoice. Plaintiff expressly disputes their authenticity, therefore considering such materials at this stage would be improper. *See Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005) (noting that courts cannot take judicial notice of documents when the documents' authenticty is disputed).

agreements are forged, noting that the signatures on each of the four contracts do not match each other, or even Plaintiff's own signature. Plaintiff further challenges the authenticity of Defendant's evidence by noting that one agreement and invoice are dated January 16, 2024, whereas the transaction took place on January 2, 2024.

Applying the governing standard here, Plaintiff's Complaint seeks relief on the grounds that Plaintiff is a "consumer" under the KCPA, and that Defendant owed Plaintiff a duty of reasonable care. Determining Defendant's Rule 12(b)(1) challenge would therefore require the Court to determine whether Plaintiff or Faith City transacted with Defendant, whether Plaintiff qualifies as a "consumer" under the KCPA, and whether Defendant owed Plaintiff a duty of care. As such, resolution of the jurisdictional question requires resolution of aspects of Plaintiff's substantive claims.[14] Accordingly, because Defendant's jurisdictional challenge is intertwined with the merits of the case, the Court must treat Defendant's Rule 12(b)(1) motion as a motion for summary judgment.[15]

Furthermore, the Court recognizes that the parties in this case should be given notice of the Court's intent to convert a motion to dismiss into one for summary judgment.[16] The Court therefore grants Defendant twenty-one (21) days to submit any additional materials to support its motion for summary judgment and Plaintiff twenty-one (21) days from the date of Defendant's filing to respond to Defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 7) is denied in part to the extent it raises a facial challenge to the Court's subject matter jurisdiction. The Court converts the remaining part of Defendant's motion into a motion

---

[14] *See Sivoza*, 282 F.3d at 1324.

[15] *Holt*, 46 F.3d at 1003.

[16] *See Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 585 F.2d 454, 456 (10th Cir. 1978).

for summary judgment. Defendant may submit additional materials to support its motion for summary judgment within twenty-one (21) days after the date of this Order, and Plaintiff may respond to Defendant's motion for summary judgment within twenty-one (21) days after Defendant's filing.

**IT IS SO ORDERED.**

Dated: August 28, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
