IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| WALZA STARR,<br><br>**Plaintiff,**<br><br>v.<br><br>GARDNER WIRELESS, LLC,<br><br>**Defendant.** | Case No. 2:25-CV-02380-JAR-TJJ |

## MEMORANDUM AND ORDER

Plaintiff Walza Starr brings this removal action against Defendant Gardner Wireless, LLC alleging claims under Kansas law for negligence; negligent hiring, retention, and supervision; and violations of the Kansas Consumer Protection Act. This matter is now before the Court on Defendant's Motion to Dismiss (Doc. 7), which the Court previously converted into a motion for summary judgment.[1] Defendant filed supplemental material in support of its converted motion for summary judgment.[2] Plaintiff has not filed any supplemental material in opposition, and the time to do so has expired.[3] The Court has considered the materials in the record along with the parties' arguments and is now prepared to rule. For the reasons explained below, the Court grants in part and denies in part Defendant's converted motion for summary judgment.

---

[1] Doc. 12.

[2] Doc. 18.

[3] Doc. 12 (setting a 21-day deadline for Plaintiff to respond to Defendant's supplemental materials in support of the converted motion for summary judgment).

I.   **Uncontroverted Facts**

The following facts are derived from the summary judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiff.[4]

On the evening of December 23, 2023, while shopping with his wife at a Target store in Overland Park, Kansas, Plaintiff—who serves as a pastor and executive officer of Faith City Christian Center ("Faith City")—was in the electronics department discussing the difference between two iPads with a Target associate and had not yet decided whether to purchase one.

As Plaintiff and his wife began to walk away, an individual standing nearby interjected and identified himself as "Sahil" from Defendant's store in Gardner, Kansas, and asked Plaintiff who provided his cell phone service. Plaintiff responded that he used AT&T and had three phone lines. Sahil then stated that if Plaintiff came to Defendant's store and activated service there, Sahil would provide three free iPhone 15 devices, three free iPads, three free Apple Watches, and free Netflix and Hulu subscriptions, as part of a package that was available through Defendant's store. Sahil further stated that the offer would be available only if Plaintiff switched his service at Defendant's store in Gardner, Kansas, and provided Plaintiff with his name, cell phone number, and the store's address.

On or about January 2, 2024, Plaintiff and his son went to Defendant's store to follow up on Sahil's offer. Sahil was not present, and an employee named April assisted them at the counter. Plaintiff turned over his three phones to April. April then asked Plaintiff for the

---

[4] The summary judgment record consists of the following materials Plaintiff submitted with his response to Defendant's original motion to dismiss, the materials Defendant submitted in support of its original motion, and the supplemental materials Defendant submitted in support of its converted motion for summary judgment: (i) Plaintiff's consumer complaint to the Johnson County District Attorney's Office (Doc. 10-9) ; (ii) two invoices from Defendant's store (Docs. 18-1 at 1–3, 18-2 at 1–2); (iii) five installment loan/security agreements (Docs. 18-1 at 4–16, 18-2 at 3–6); (iv) the unsworn declaration of Defendant's records custodian and senior store manager, Christopher Troiano (Doc. 18); and (v) Kansas Secretary of State records listing Plaintiff as an executive officer of Faith City Christian Center (Docs. 8-2, 8-3).

passcodes to each of the three phones involved in the transaction, told Plaintiff it would be easier if she had them so she would not have to "keep asking," and wrote the passcodes down on sticky notes near her workstation. Using those passcodes, April began transferring data, activating new devices, and configuring the accounts, working on all three phones at the same time. Plaintiff and April also discussed converting an existing landline, used for Faith City's fire protection and security alarm system, to a wireless landline box. However, April informed Plaintiff that the wireless box was on backorder and instructed him to keep the AT&T landline active until it arrived.

The process took approximately two and a half hours. When she finished, April stated that the data transfers were complete and that she was erasing the data from the phones Plaintiff had provided. To complete the transaction, Plaintiff provided April with Faith City's name and address, along with a copy of Faith City's Kansas tax-exempt certificate. Using that information, the purchase was processed as a tax-exempt transaction, avoiding $381.84 in sales tax.

In connection with the transaction, four installment loan/security agreements were electronically generated. Each agreement identifies Faith City, not Plaintiff, as the customer. Three of the four agreements bear an electronic signature block signed by Plaintiff beneath language stating, "I am authorized to act on behalf of the Borrower, and the execution of this Agreement has been duly authorized by the Borrower."[5] Defendant's supplemental materials omit the signature page for the fourth agreement generated by this transaction.[6] The agreements are for three iPhone 15 Pro Max devices and a Business Verizon Internet Gateway and were signed electronically on a small point-of-sale device. Plaintiff was not provided with paper

---

[5] Doc. 18-1 at 7, 11, 16.

[6] *See* Doc. 18-1 at 12.

copies of these agreements. Instead, signed copies were automatically sent to the email address nustartcarrers@gmail.com, which Plaintiff provided in connection with the transaction.

At the close of the transaction, as Plaintiff prepared to leave Defendant's store, he observed yellow sticky notes on the counter that he believed still contained the passcodes he had provided to April. Furthermore, Plaintiff did not receive any of the free iPads, Apple Watches, iPhone 15 devices, or the free Netflix and Hulu subscriptions that Sahil had promised. The next day, Plaintiff contacted Sahil to ask why those items and services were not provided, and Sahil responded that the promotion did not apply to "business accounts."[7] Plaintiff reminded Sahil that their arrangement "was [for] a *church* account."[8]

In the days that followed, Plaintiff began noticing unauthorized access to his online accounts. Plaintiff discovered through his Google account manager that multiple users were logged in to his email accounts from devices he did not recognize. When he attempted to change his passwords, he found that the changes were quickly overridden, and he was ultimately locked out of certain accounts. Plaintiff became increasingly concerned that both his personal and financial information, as well as information connected to Faith City, had been compromised through the devices and credentials he had provided at Defendant's store. Plaintiff contacted his bank, which froze accounts associated with him and cancelled debit cards as a precaution. Plaintiff also observed irregularities with Faith City's Cash App account, including failed attempts to transfer funds, prompts indicating that multiple devices were signed in, and security alerts requiring him to log out all devices and reset credentials.

---

[7] Doc. 10-9 at 4.

[8] *Id.* (emphasis added).

Shortly thereafter, Plaintiff returned to Defendant's Gardner store with an additional iPhone that belonged to Faith City but was not then in regular use, intending to use it and reset his new phone in light of the issues he was experiencing. When Plaintiff entered Defendant's store, Sahil asked how Plaintiff's new phone was working. Plaintiff presented the additional iPhone, explained that he did not know its passcode, and observed Sahil remove something from that phone, place it into another device on the counter, and gain access. Plaintiff also asked about the status of the wireless landline box he had discussed with April on January 2, and Sahil responded that the boxes were still on backorder.

Troubled by the unresolved status of the wireless landline box and Sahil's assurance that the boxes were still on backorder, Plaintiff went to a different Verizon store in Overland Park, Kansas. There, a representative told him that wireless landline boxes were in stock, retrieved one from inventory, and began attempting to activate it for Faith City's existing line. When the representative was unable to complete activation, he suggested that Plaintiff contact Defendant's store to determine whether any steps had already been taken to activate the landline. Plaintiff then called Defendant's store, and April denied that she, or anyone at Defendant's store, had initiated any process involving the landline. Still concerned, Plaintiff contacted AT&T directly and was informed that Faith City's landline number ending in 0919 had been changed from a landline to a wireless phone line assigned to an iPhone 13 Pro Max. Plaintiff had not requested or authorized that change.

On January 16, 2024, an additional installment loan/security agreement was electronically generated at Defendant's store for the purchase of an Apple iPhone 14. The January 16 agreement likewise identifies Faith City as the customer, uses Faith City's tax-

5

exempt information so that no sales tax was charged, and is signed by Plaintiff. An electronic copy of the agreement was sent to the email address nustartcarrers@gmail.com.

Since February 2024, Faith City has received monthly invoices related to the five installment loan/security agreements, and those agreements have been paid each month by Faith City. Neither Faith City nor Plaintiff has contacted Defendant to change the name of the contracting party on the account or to convert the account to a personal account.

On September 26, 2024, Plaintiff filed this action in the District Court of Johnson County, Kansas. On June 3, 2025, Plaintiff filed a Second Amended Petition naming Gardner Wireless, LLC as the Defendant and asserting claims for negligence; negligent hiring, retention, and supervision; and violations of the Kansas Consumer Protection Act ("KCPA").[9] Defendant was served on June 25, 2025, and removed the action to this Court on July 15, 2025, pursuant to 28 U.S.C. §§ 1332, 1441(a), and 1446(b).[10]

Defendant then moved to dismiss Plaintiff's claims under Rule 12(b)(1), arguing that Plaintiff lacks standing to assert his claims because Faith City, not Plaintiff, was the customer in the transaction and therefore (1) Plaintiff is not a "consumer" under the KCPA, and (2) Defendant did not owe any duty of care to Plaintiff.[11] The Court denied the motion to the extent it asserted a facial attack on the sufficiency of Plaintiff's Second Amended Petition and converted the remaining portion of Defendant's motion into a motion for summary judgment to determine whether Plaintiff is, in fact, a "consumer" under the KCPA and whether Defendant owed Plaintiff a duty of care.[12]

---

[9] Doc. 1-1.

[10] Doc. 1.

[11] Doc. 7.

[12] Doc. 12.

**II.     Standard**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[13] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party.[14] "There is no genuine issue of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[15] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[16] An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."[17]

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[18] Once the movant has met this initial burden, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[19] The non-moving party may not simply rest upon its pleadings to satisfy its burden.[20] Rather, the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[21]

---

[13] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[14] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[15] *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir. 2004).

[16] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc*., 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998)).

[17] *Thomas v. Metro. Life Ins. Co*., 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

[18] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

[19] *Anderson*, 477 U.S. at 256.

[20] *Id*.; *accord Eck v. Parke, Davis & Co*., 256 F.3d 1013, 1017 (10th Cir. 2001).

[21] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 671).

To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein."[22] The non-moving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation.[23]

**III.   Discussion**

    **A.  KCPA Claim**

The Court begins its analysis with Plaintiff's KCPA claim alleged in Count III of the Second Amended Petition. Defendant contends that Plaintiff lacks standing to bring this claim because he is not a "consumer" within the meaning of the KCPA, as Faith City—not Plaintiff—was the party that transacted business with Defendant.

To have standing to sue under the KCPA, Plaintiff must be a "consumer."[24] "In order to be a consumer under the KCPA, one must have been a party to the contract for purchase."[25] "The KCPA's protection is limited to individuals who directly contract with suppliers for goods or services."[26]

Here, Defendant has met its burden of showing that there is no genuine dispute of material fact that Faith City—not Plaintiff—was the party "who directly contract[ed] with [Defendant] for goods or services."[27] Defendant submitted the declaration of Christopher Troiano, Defendant's senior store manager and records custodian, who attests to having personal

---

[22] *Adams v. Am. Guar. & Liab. Ins.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[23] *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006).

[24] *Doe 7 v. Univ. of Kan.*, No. 16-2458-JTM, 2017 WL 4037704, at *2 (D. Kan. Sept. 13, 2017); *Hayes v. Find Track Locate, Inc.*, 60 F. Supp. 3d 1144, 1151 (D. Kan. 2014).

[25] *Hayes*, 60 F. Supp. 3d at 1151.

[26] *Id.*

[27] *Id.*

knowledge of the authenticity, truth, and correctness of the five agreements. Those agreements uniformly identify Faith City as the customer in the transaction, not Plaintiff. Although Plaintiff's signature appears on four of the agreements, it does so beneath language stating that he is authorized to act on behalf of the named customer, Faith City. And none of the agreements impose individual liability on Plaintiff for any of the purchased devices.

In response to Defendant's original motion to dismiss, Plaintiff asserts, solely in the argument section of his response brief, that he never signed any agreement, never saw any paperwork, and that the agreements are forged. However, Plaintiff cites no affidavit, deposition testimony, or other admissible evidence in the summary judgment record to support those assertions. A "nonmoving party cannot avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."[28] On this record, Plaintiff fails to meet his burden to show a genuine issue for trial as to whether he was a "party to the contract for purchase."[29] Indeed, the only additional material Plaintiff submits is his consumer complaint to the Johnson County District Attorney's Office, in which he describes the transaction as being for "a *church* account."[30] Accordingly, the Court finds that Plaintiff lacks standing to bring a claim under the KCPA, and Defendant is therefore entitled to summary judgment on Count III.

---

[28] *Brownlee v. Corby*, No. 20-3122-JAR, 2025 WL 1342776, at *1 (D. Kan. May 8, 2025) (citing *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)).

[29] *Hayes*, 60 F. Supp. 3d at 1151.

[30] Doc. 10-9 at 4 (emphasis added).

### B. Negligence Claims

The Court next addresses Plaintiff's negligence and negligent hiring, retention, and supervision claims alleged in Counts I and II of the Second Amended Petition. Defendant argues that it owed no duty of care to Plaintiff, because Faith City—not Plaintiff—was the entity that contracted with Defendant. The parties do not identify, and the Court has not found, any Kansas authority directly addressing whether a party who transacts business with an organization owes a duty of care to an individual who executes the agreements on the organization's behalf and later alleges personal harm arising from that transaction. The Court therefore turns to general principles of Kansas law governing the existence of a legal duty to resolve this issue.[31]

The Kansas Supreme Court has held that "[t]o find a legal duty to support a negligence claim, (1) the plaintiff must be a foreseeable plaintiff and (2) the probability of harm must be foreseeable."[32] "A foreseeable plaintiff is one that is 'within the range of apprehension.'"[33]

Here, Defendant has not met its burden of showing that there is no genuine dispute of material fact that it owed no duty of care to Plaintiff. First, the undisputed facts place Plaintiff within Defendant's "range of apprehension."[34] Defendant's employee, Sahil, personally solicited Plaintiff at Target with promises of free devices and directed him to Defendant's store. Defendant's contractual relationship with Faith City was then initiated and carried out through Plaintiff. Plaintiff traveled to Defendant's store to complete the transaction, surrendered his three devices to April, and April requested, recorded, and used his passcodes to access and

---

[31] When sitting in diversity, the Court is bound by "the latest holdings of the state's highest court." *United States v. Turley*, 878 F.3d 953, 957 (10th Cir. 2017). If that court provides no "definitive resolution of the legal issue," the Court must predict how it would rule. *Id.*

[32] *Berry v. Nat'l Med. Servs., Inc.*, 257 P.3d 287, 290 (Kan. 2011).

[33] *Id.* (quoting *Durflinger v. Artiles*, 673 P.2d 86, 91 (Kan. 1983)).

[34] *Id.*

handle each device. In doing so, Defendant's employees dealt directly with Plaintiff and obtained access to his personal information through his devices and credentials. Accordingly, Defendant has not carried its burden to show that there is no genuine issue of material fact that Plaintiff, the individual through whom Defendant dealt with on behalf of Faith City and whose devices and data Defendant affirmatively accessed, was not a foreseeable plaintiff.

Second, the probability of harm to Plaintiff from the alleged mishandling of his devices, passcodes, and related account information was likewise foreseeable. Permitting an employee to retain Plaintiff's phone passcodes on sticky notes at the sales counter and to access and erase data from his phones could reasonably be expected to expose him to a risk of unauthorized access to his personal and banking information.

Therefore, viewing the record in the light most favorable to Plaintiff, the Court cannot conclude that Plaintiff was beyond Defendant's range of apprehension or that the probability of harm to him was unforeseeable as a matter of law. Accordingly, Defendant is not entitled to summary judgment on Plaintiff's negligence and negligent hiring, retention, and supervision claims alleged in Counts I and II.

### C. Attorney's Fees

Lastly, Defendant asks the Court to award its costs and attorney's fees in granting its motion but cites no authority in support of its request. Defendant does not move for sanctions under Rule 11, so the Court does not consider this as a basis to impose an award of fees. In any event, a motion for sanctions under Rule 11 "must be made separately from any other motion,"[35] and Defendant merely includes its request for fees within its motion to dismiss. Furthermore, the Court does not find that Plaintiff has "acted in bad faith, vexatiously, wantonly, or for oppressive

---

[35] Fed. R. Civ. P. 11.

reasons" sufficient to invoke the Court's inherent power to impose attorney's fees.[36] Accordingly, Defendant's request for costs and attorney's fees is denied.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 7), which the Court previously converted into a motion for summary judgment, is **granted in part and denied in part**. Defendant's motion for summary judgment with respect to Count III is **granted**. Defendant's motion for summary judgment with respect to Counts I and II is **denied**.

**IT IS FURTHER ORDERED** that Defendant's request for costs and attorney's fees is **denied**.

**IT IS SO ORDERED.**

Dated: November 14, 2025

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[36] *Ireland v. Dodson*, 704 F. Supp. 2d 1128, 1145 (D. Kan. 2010) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)).